No. 19-15155-AA

In the
# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JONATHAN HIPPS,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:19-CR-12-ORL-31GJK

## BRIEF OF THE UNITED STATES

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

HOLLY L. GERSHOW
Assistant United States Attorney
Appellate Division
Florida Bar No. 98960
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

January 13, 2021

*United States v. Jonathan Hipps*
No. 19-15155-AA

## Certificate of Interested Persons
## and Corporate Disclosure Statement

In addition to the persons identified in the Certificate of Interested Persons and Corporate Disclosure Statement in Jonathan Hipps's principal brief, the following persons have an interest in the outcome of this case:

1.   Chiu, Vincent S., former Assistant United States Attorney;

2.   Gershow, Holly L., Assistant United States Attorney;

3.   Kelly, Hon. Gregory J., United States Magistrate Judge;

4.   Lopez, Maria Chapa, United States Attorney;

5.   National Aeronautics and Space Administration, victim;

6.   Ponall, William R., Esq.;

7.   Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division; and

8.   Spaulding, Hon. Karla R., United States Magistrate Judge (retired).

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Statement Regarding Oral Argument ................................................................i

Table of Contents ............................................................................................ii

Table of Citations ...........................................................................................iv

Statement of Jurisdiction ..............................................................................vii

Statement of the Issues .................................................................................. 1

Statement of the Case .................................................................................... 1

    *Course of Proceedings* .............................................................................. 2

    *Statement of the Facts*.............................................................................. 3

    *Standards of Review*................................................................................. 9

Summary of the Argument .......................................................................... 10

Argument and Citations of Authority ......................................................... 13

    I.    The district court did not plainly err in allowing evidence of
        uncharged activity.................................................................... 13

    II.    The district court did not plainly err by allowing Agent
        Shores to testify that he had concerns that Hipps was not
        being honest with him and that he had told Hipps that he
        did not believe him. ................................................................ 18

    III.    The prosecutor did not improperly shift the burden of proof
        to Hipps, but, even if he had, any error was cured by the
        district court's repeated instructions to the jury regarding the
        correct burden of proof............................................................ 21

IV.    The prosecutor did not plainly comment impermissibly on Hipps's Fifth Amendment right to remain silent. ....................... 26

V.    The cumulative weight of any errors does not warrant the reversal of Hipps's convictions .................................................. 26

Conclusion .................................................................................................... 30

Certificate of Service

# Table of Citations

## Cases

*Davis v. Washington,*
   547 U.S. 813 (2006) ................................................................... 27

*In re Price,*
   964 F.3d 1045 (11th Cir. 2020) ................................................. 25

*Judd v. Rodman,*
   105 F.3d 1339 (11th Cir. 1997) ................................................. 20

*United States v. Baker,*
   432 F.3d 1189 (11th Cir. 2005) ................................................. 27

*United States v. Brown,*
   53 F.3d 312 (11th Cir. 1995) ............................................... 28, 29

*United States v. Brown,*
   441 F.3d 1330 (11th Cir. 2006) ................................................. 14

*United States v. Capers,*
   708 F.3d 1286 (11th Cir. 2013) ................................................. 10

*United States v. Costa,*
   691 F.2d 1358 (11th Cir. 1982) ................................................. 15

*United States v. Dohan,*
   508 F.3d 989 (11th Cir. 2007) ................................................... 10

*United States v. Flanders,*
   752 F.3d 1317 (11th Cir. 2014) ................................................. 10

*United States v. Fortenberry,*
   971 F.2d 717 (11th Cir. 1992) ................................................... 14

*United States v. Foster,*
   889 F.2d 1049 (11th Cir. 1989) ................................................. 14

*United States v. Frank,*
   599 F.3d 1221 (11th Cir.2010) .................................................. 22

*United States v. Garcia*,
  778 F. App'x 779 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2696 (2020) ....... 17

*United States v. Golden*,
  854 F.3d 1256 (11th Cir. 2017) ................................................................. 26

*United States v. Henderson*,
  409 F.3d 1293 (11th Cir. 2005) ...........................................................18, 19

*United States v. Holt*,
  777 F.3d 1234 (11th Cir. 2015) ................................................................. 14

*United States v. Iriele*,
  977 F.3d 1155 (11th Cir. 2020) ................................................................. 27

*United States v. Jernigan*,
  341 F.3d 1273 (11th Cir. 2003) ................................................................... 9

*United States v. Merrill*,
  513 F.3d 1293 (11th Cir.2008) .................................................................. 22

*United States v. Norton*,
  867 F.2d 1354 (11th Cir. 1989) ................................................................. 14

*United States v. Ochoa*,
  941 F.3d 1074 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2553 (2020) ............ 27

*United States v. Ramirez-Flores*,
  743 F.3d 816 (11th Cir. 2014) ................................................................... 17

*United States v. Richardson*,
  764 F.2d 1514 (11th Cir. 1985) ................................................................. 14

*United States v. Rivera*,
  944 F.2d 1563 (11th Cir. 1991) ................................................................. 26

*United States v. Rodriguez*,
  398 F.3d 1291 (11th Cir. 2005) ...........................................................17, 21

*United States v. Samson*,
  540 F. App'x 927 (11th Cir. 2013) .......................................................19, 20

*United States v. Schmitz*,
  634 F.3d 1247 (11th Cir. 2011) ............................................................10, 19

*United States v. Simon*,
  964 F.2d 1082 (11th Cir. 1992) ............................................................22, 25

*United States v. Singer*,
  963 F.3d 1144 (11th Cir. 2020) ................................................................. 24

*United States v. Spoerke*,
  568 F.3d 1236 (11th Cir. 2009) ................................................................. 16

*United States v. Terzado-Madruga*,
  897 F.2d 1099 (11th Cir. 1990) ................................................................. 14

*United States v. US Infrastructure, Inc.*,
  576 F.3d 1195 (11th Cir. 2009) ................................................................. 16

*United States v. Wright*,
  392 F.3d 1269 (11th Cir. 2004) ................................................................. 16

**Statutes**

18 U.S.C. § 1001(a)(1) ...................................................................................... 2

18 U.S.C. § 1001(a)(3) ...................................................................................... 2

18 U.S.C. § 1321 ............................................................................................... 2

18 U.S.C. § 3231 ............................................................................................ vii

28 U.S.C. § 1291 ............................................................................................ vii

**Rules**

Fed. R. App. P. 4(b) ...................................................................................... vii

Fed. R. Evid. 403 ......................................................................................14–16

Fed. R. Evid. 404(b) ..................................................................................13, 15

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment against Jonathan Hipps on December 10, 2019, Doc. 80, and Hipps timely filed a notice of appeal on December 24, 2019, Doc. 84. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issues

I.     Did the district court plainly err in allowing evidence of uncharged activity?

II.    Did the district court plainly err by allowing Agent Shores to testify that he had concerns that Hipps was not being honest with him and that he had told Hipps that he did not believe him?

III.   Did the prosecutor improperly shift the burden of proof to Hipps, and, even if he did, was any error cured by the district court's repeated instructions to the jury regarding the correct burden of proof?

IV.    Did the prosecutor plainly comment improperly on Hipps's Fifth Amendment right to remain silent?

IV.    Does the cumulative weight of any errors warrant the reversal of Hipps's convictions?

## Statement of the Case

Jonathan Hipps worked for a company, STAT Industries, that provided materials to NASA. Despite knowing that those materials had to be made in the United States, Hipps concealed that the threaded rods he sent to NASA had been made in India. In this direct criminal appeal, he objects, mostly for the first time, to arguments made and evidence introduced by the United States.

1

*Course of Proceedings*

A grand jury returned an indictment charging Jonathan Hipps with mail fraud, in violation of 18 U.S.C. § 1321 (count one); concealment of a material fact, in violation of 18 U.S.C. § 1001(a)(1) (count two); and the making of a false statement or representation, in violation of 18 U.S.C. § 1001(a)(3) (count three). Doc. 1.

Hipps pleaded not guilty and proceeded to trial. *See* Docs. 61, 63, 65. Before the parties' opening statements, the district court instructed the jury that "the defendant is presumed innocent until proven guilty," that "the burden of proof is on the Government until the end of the case," and that "[t]he defendant has no burden to prove his innocence or to present any evidence or to testify." Doc. 61 at 97. And, before closing arguments, the court repeated: "The law presumes every defendant to be innocent. The defendant does not have to prove his innocence or present any evidence at all. The Government must prove guilt beyond a reasonable doubt. If it fails to do so, you must find the defendant not guilty." Doc. 63 at 100; *see also id.* at 111 (court stating to jury, "The Government has the burden, as you know, and goes first and has the opportunity to present rebuttal.").

The jury found Hipps guilty as charged, Doc. 65 at 4, and the district court sentenced him to a one-year term of probation, Doc. 80.

This appeal followed. Doc. 84.

## Statement of the Facts

NASA solicited bids from vendors for materials including stainless steel tubes and threaded rods. Doc. 61 at 114–15; Gov't Ex. 1.1. NASA received a quote from a vendor called STAT Industries and entered into a contract to purchase the material from it. Doc. 61 at 118–19; Gov't Exs. 1.2, 1.3. As part of the contract, NASA required that all material be made in the United States. Doc. 61 at 120–21.

Hipps was a technical specialist at STAT who worked on fulfilling the contract with NASA. Doc. 61 at 137. He obtained the materials from CBOL Corporation. *Id*. at 138. He explicitly told CBOL that the materials had to be made in the United States. *Id*. at 138, 142.

Hipps's counterpart at CBOL sent a message to multiple email accounts at STAT, including two used by Hipps, alerting the recipients that he had just shipped out the threaded rods. Doc. 61 at 144–45; Gov't Ex. 5.2. Attached to that email was a mill certificate, which stated that the threaded rods had been manufactured in India and that the materials were of Indian origin. Doc. 61 at 145–47; Gov't Ex. 5.2.

When the threaded rods were delivered to STAT, Hipps's boss, Deborah Raney, inspected the crate and instructed him to remove the labels, which he

did. Doc. 61 at 165, 169; Doc. 63 at 49–50. The labels were marked "MADE IN INDIA." Doc. 61 at 158–59; Gov't Ex. 7.3. Raney then gave Hipps a certificate of conformance, which stated that the threaded rods had been made in the United States, for Hipps to put in the crate. Doc. 61 at 165; Gov't Ex. 3.2. NASA received the threaded rods from STAT. Doc. 61 at 130–31.

NASA's Office of the Inspector General began to investigate stainless steel tubes provided by STAT, which NASA suspected had been made in China. Doc. 61 at 135–36, 139. As part of the investigation, Special Agent William Shores interviewed Hipps telephonically. Doc. 61 at 136. When Agent Shores first interviewed Hipps, NASA did not suspect that there was anything wrong with the threaded rods. *Id*. Moreover, Agent Shores did not suspect Hipps of any wrongdoing with respect to the tubes; rather the investigation at that point focused on the supplier, CBOL. *Id*. at 150. (And, at the conclusion of the investigation, Agent Shores had no evidence that Hipps had done anything wrong with respect to the stainless steel tubes. *See id*. at 173.)

During the first interview, Hipps described his job duties at STAT and confirmed that he had told CBOL that the materials had to be made in the United States. Doc. 61 at 137–38. Agent Shores asked Hipps if he was aware of any other materials or shipments from STAT to NASA that had contained

4

substandard parts or equipment, and Hipps responded that he was not. *Id*. at 138.

About a month later, Agent Shores interviewed Hipps again, this time in person. Doc. 61 at 139. At this point, Agent Shores still did not suspect anything about the threaded rods. *Id*. at 141. During this interview, Hipps identified email accounts that had been assigned to him at STAT. *Id*. The interview again focused on the stainless steel tubes, and Hipps explained that STAT had been under schedule pressure. *Id*. at 141–42. He also remembered that he had sent an email to his counterpart at CBOL stating that the materials had to be domestic only. *Id*. at 142. Hipps did not say anything about the threaded rods. *Id*.

After that interview, NASA OIG obtained a search warrant for some of STAT's email accounts, including Hipps's accounts. Doc. 61 at 142–43. That search returned an email from CBOL to recipients at STAT, including Hipps, attached to which were documents showing that the threaded rods had been made in India. Doc. 61 at 145–47; Gov't Ex. 5.2. This raised concerns about the threaded rods and also as to whether Hipps had been honest with Agent Shores during the first two interviews. Doc. 61 at 149–50.

Agent Shores then obtained a search warrant for STAT's office. Doc. 61 at. 151. During that search, NASA investigators seized two file folders from

5

STAT containing documents pertaining to the threaded rods. *Id*. at 153; Gov't

Exs. 6–7. One folder contained the mill test report showing that the threaded

rods had been manufactured in India and the certificate of conformance for the

threaded rods. Doc. 61 at 156; Gov't Exs. 6.2, 6.3. The other folder contained

another copy of the mill test report and the labels that had been removed from

the threaded rods. Doc. 61 at 157–58; Gov't Exs. 7.2, 7.3. Those label stated

that the threaded rods were "MADE IN INDIA." Gov't Ex. 7.3 (shown

below).



Agent Shores, accompanied by Special Agent Thomas DiVita,

6

interviewed Hipps again. Doc. 61 at 161. Although Agent Shores had intended
to record this interview, he accidently grabbed the wrong folder, which did not
have a recorder in it. *Id.* at 162. After reviewing information from the previous
interviews, Agent Shores told Hipps that NASA had executed a search warrant
for STAT's emails, and the color drained from Hipps's face and his mouth
went dry. *Id.* at 164. Agent Shores showed Hipps the mill test report, and
Hipps acknowledged that it had gone to his email account but stated that he
did not recall having seen that document. *Id.* at 165–66. He said that, on the
day the threaded rods had arrived at STAT, he and Raney had inspected the
crates, he had given the paperwork to Raney, and she in turn had given him a
certificate of conformance to put in the crate. *Id.* at 165.

Agent Shores then showed Hipps the STAT file folders. Doc. 61 at 166.
Upon seeing them, Hipps gasped and then said, "Oh, wow. Oh, my God." *Id.*
at 166–67; *see also* Doc. 63 at 12. He said that he had been responsible for
creating and maintaining the folders and that Raney would also put paperwork
in there from time to time. Doc. 61 at 167; *see also* Doc. 63 at 12–13. Agent
Shores began showing him documents from the file folders that indicated that
the threaded rods were from India, and Hipps repeatedly responded that he did
not recall having seen any of those documents. Doc. 61 at 167. When Agent
Shores challenged him on the truthfulness of that answer, he either said he did

7

not know or became unresponsive. *Id*.

At that point, Agent Shores showed Hipps the yellow labels that had been removed from the threaded rods. Doc. 61 at 168. Hipps said that he did not recall seeing the wording on the labels, and Agent Shores replied that he no longer believed anything that Hipps was saying. *Id*.; *see also* Doc. 63 at 14. In response, Hipps slumped back in his chair, dropped his head, and said that Raney had told him "to just get the stuff shipped." Doc. 61 at 169; *see also* Doc. 63 at 14. He then stated that Raney had instructed him to cut off the labels and that he had just been following instructions. Doc. 61 at 169; *see also* Doc. 63 at 14. When asked why Raney had wanted the labels cut off, Hipps responded, "To make it look like the threaded rod came from or was made in the United States." Doc. 61 at 169; *see also* Doc. 63 at 15.

Hipps testified in his own behalf at trial. He explained that he had told CBOL that the parts had to be from the United States and that he had expected that CBOL would follow his instructions. Doc. 63 at 48, 51. He admitted that he had removed the labels on the threaded rods but stated that he had not looked closely at them. *Id.* at 50–51. He denied that he had removed the labels because he had wanted to make it appear that they had somehow been made in the United States. *Id.* at 52–53. He also testified that he did not read the attachments to the email from CBOL informing STAT that the threaded rods

8

would be arriving because he had only been copied on the email and he had been busy with other tasks. *Id*. at 50–51.

He said that, when Agent Shores had pulled out the folders, he had been surprised because he had not seen them in a long time. Doc. 63 at 60–61. He testified that he had told Agent Shores that he had not seen the "made in India" on the labels and that Agent Shores had responded by leaning across the table and saying in a low voice, "I do not believe you. I believe you are lying." *Id*. at 61–62. Hipps further testified that he had been shocked when Agent Shores had shown him "made in India" on the label: "I was just shocked because I never—I was rushing so much that I didn't get to see that. It—I never saw it." *Id*. at 62.

### *Standard of Review*

I–II.   This Court ordinarily reviews the district court's admission of evidence for abuse of discretion, but evidentiary errors that are not specifically objected to at trial are reviewed for plain error. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). Under the plain-error standard, Hipps must show that: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings. *See id*.

III.    This Court generally reviews de novo claims of prosecutorial

conduct based on alleged burden shifting, but, where the defendant did not object contemporaneously, plain-error review applies. *United States v. Schmitz*, 634 F.3d 1247, 1266–68 (11th Cir. 2011).

    IV.    This Court generally reviews de novo whether a prosecutor committed misconduct by making comments that violated a defendant's Fifth Amendment rights, but, where the defendant did not object contemporaneously, plain-error review applies. *United States v. Flanders*, 752 F.3d 1317, 1334 (11th Cir. 2014).

    V.    This Court reviews de novo the cumulative impact of errors at a trial. *United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007). This Court will not reverse a conviction unless the defendant can show that an aggregation of nonreversible errors affected his substantial rights. *United States v. Capers*, 708 F.3d 1286, 1299 (11th Cir. 2013).

## Summary of the Argument

    I.    The district court did not plainly err in admitting evidence of uncharged conduct. Evidence of NASA's investigation into stainless steel tubes provided by STAT to NASA was intrinsic to the charged conduct because it explained why Agent Shores had interviewed Hipps the first two times and why the investigation into the threaded rods had started. It was not admitted to prove that Hipps had a propensity to commit the charged crime. Therefore

Federal Rule of Evidence 404(b) did not apply. Instead, the evidence was admissible unless its probative value was substantially outweighed by the potential for unfair prejudice. It was not. The evidence was relevant because it contributed to the jury's understanding of the situation as a whole, gave context to the discovery of evidence against Hipps, and put a cohesive sequence of the crime before the jury. This probative value was not substantially outweighed by the potential for unfair prejudice because the jury was told that Hipps was not involved in any wrongdoing with respect to the stainless steel tubes, and, in fact, the jury was not told what the ultimate conclusion of the investigation into the tubes was. In light of the foregoing, Hipps has not shown that the district court abused its discretion, let alone that it committed plain error affecting his substantial rights, so he is entitled to no relief on this claim.

II.    The district court did not plainly err by allowing Agent Shores to testify that he had concerns that Hipps was not being honest with him and that he had told Hipps that he did not believe him. This testimony was not offered to prove that Hipps was not credible but rather to explain and give context to Agent Shores's interview of Hipps. Hipps has cited to no controlling authority establishing that the district court abused its discretion in admitting analogous testimony, nor has he shown that the purported errors affected his substantial

rights. Consequently, he has not established that he is entitled to relief under plain-error review.

III.    The prosecutor did not improperly shift the burden of proof to Hipps. The challenged statement and questions did not imply that Hipps had the burden of proving his innocence or of producing evidence. But, even if they had, any error was cured by the district court's repeated instructions to the jury regarding the correct burden of proof.

IV.    The prosecutor did not plainly comment impermissibly on Hipps's Fifth Amendment right to remain silent. Hipps's argument, raised for the first time on appeal, relates to pre-arrest silence, and, as he concedes, this Court's precedent forecloses his claim. He is entitled to no relief on this claim either.

V.    The cumulative weight of any errors does not warrant the reversal of Hipps's convictions. First, Hipps has not shown any error, let alone the multiple errors needed to establish cumulative error. Nor has he shown that the purported errors in aggregate affect his substantial rights. This Court should affirm Hipps's convictions.

## Argument and Citations of Authority

### I.     The district court did not plainly err in allowing evidence of uncharged activity.

The district court did not plainly err in introducing evidence of NASA's investigation into stainless steel tubes provided by STAT to NASA. NASA investigated the alleged foreign origin of two types of material that STAT had provided to it—stainless steel tubes and threaded rods—and, although Hipps was charged only in connection with the threaded rods, the testimony regarding the stainless steel tubes was intrinsic—and certainly was not plainly extrinsic—to the charged offense. And it was not offered to prove that Hipps had the propensity to commit the charged crime. Moreover, the evidence's probative value was not plainly substantially outweighed by the danger of unfair prejudice.

Rule 404(b) prohibits evidence of "any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But an uncharged act is intrinsic to the charged conduct and therefore admissible if "(1) the uncharged [act] arose out of the same transaction or series of transactions as the charged offense, (2) the evidence is necessary to complete the story of the crime, or (3) the evidence is inextricably intertwined with the evidence regarding the

charged offense." *United States v. Holt*, 777 F.3d 1234, 1262 (11th Cir. 2015).

Evidence is "inextricably intertwined" if it forms an "integral and natural part

of the witness's accounts of the circumstances surrounding the offenses for

which the defendant was indicted." *United States v. Foster*, 889 F.2d 1049, 1053

(11th Cir. 1989). When evidence of other bad acts is intrinsic, Federal Rule of

Evidence 404(b) is not implicated, and the focus, instead, is on Rule 403.

*United States v. Richardson*, 764 F.2d 1514, 1521–22 (11th Cir. 1985).

Under Rule 403, court may exclude relevant evidence if "its probative

value is substantially outweighed by the danger of unfair prejudice, confusing

the issues, [or] misleading the jury." Fed. R. Evid. 403. But a district court's

discretion to exclude evidence under Rule 403 is narrowly circumscribed and

should be used sparingly. *See United States v. Fortenberry*, 971 F.2d 717, 721

(11th Cir. 1992); *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989).

The balance under Rule 403 should be struck in favor of admissibility. *See*

*United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990). And, in

reviewing whether evidence was properly admitted under Rule 403, this Court

examines the evidence "in a light most favorable to its admission, maximizing

its probative value and minimizing its undue prejudicial impact." *United States*

*v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006).

Agent Shores's testimony about the stainless steel tubes was an "integral

and natural part" of his account of his investigation into Hipps. It provided context to the offenses and explained how and why NASA began the investigation that led to Hipps. *Cf. United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982) (testimony establishing how witness came to know defendant as a drug dealer was not extrinsic). Without that information, the jury would have been invited to speculate about the background to the prosecution. As Agent Shores explained, the investigation that led to Hipps's prosecution had started based on concern about the stainless steel tubes that STAT had provided to NASA. Doc. 61 at 135–36, 139. Agent Shores did not suspect Hipps of any wrongdoing with respect to those tubes and initially interviewed Hipps solely as a witness to find out more information about the transaction, as Hipps had been involved in it. *Id.* at 137, 150. It was only after executing search warrants as part of the tube investigation and finding evidence that the threaded rods had been made in India that Agent Shores had begun to suspect Hipps of wrongdoing, leading to the third interview. *See id.* at 150, 159–60.

Thus, testimony about the investigation into the stainless steel tubes was intrinsic to the charged offenses and was not offered to prove that Hipps had done something wrong with respect to the tubes and therefore was more likely to have done something wrong with respect to the rods. Consequently, Rule 404(b) did not apply. Therefore, the only analysis is whether the testimony was

15

admissible under Rule 403.

It was—and it certainly was not plainly inadmissible. The evidence was relevant because it contributed to the jury's understanding of the situation as a whole, gave context to the discovery of evidence against Hipps, and put a cohesive sequence of the crime before the jury. *See United States v. Wright*, 392 F.3d 1269, 1276–77 (11th Cir. 2004); *see also United States v. Spoerke*, 568 F.3d 1236, 1251 (11th Cir. 2009) (holding that United States was permitted to refer to the chain of events leading to the defendant's arrest because that was "an integral and natural part of the account of the crime"). And, this is not the "extraordinary" case where that probative value was substantially outweighed by potential for unfair prejudice. *See United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1211 (11th Cir. 2009) (recognizing that "the test under Rule 403 is whether the other acts evidence was dragged in by the heels solely for prejudicial impact") (internal quotation marks omitted). First, there was no evidence introduced about the outcome of the stainless steel tube investigation. In other words, the jury was told only that there was an investigation, not that the investigation discovered actual wrongdoing. Second, the jury was told that Agent Shores did not suspect that Hipps had any involvement in wrongdoing with respect to the tubes and that the investigation showed that he was not. *See* Doc. 61 at 15, 173.

16

Hipps cites no controlling precedent establishing that testimony explaining how an investigation started is extrinsic or that its evidentiary value is substantially outweighed by potential for undue prejudice. Therefore he has not established plain error. *See United States v. Ramirez-Flores*, 743 F.3d 816, 822 (11th Cir. 2014) (noting that "[a]n error is 'plain' if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred"); *United States v. Garcia*, 778 F. App'x 779, 787 (11th Cir. 2019) (no plain error where no precedent suggested that district court had abused its discretion in admitting evidence), *cert. denied*, 140 S. Ct. 2696 (2020).

Further, as discussed above, there was no evidence introduced establishing that a crime had been committed by anyone—let alone by Hipps—with respect to the tubes. So there is no reasonable probability that testimony about the uncharged stainless steel tubes changed the outcome of the trial in light of the ample evidence that Hipps had known and concealed that the threaded rods had been manufactured in India. *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005) ("The standard for showing [an effect on substantial rights] is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome.") (internal quotation marks omitted); *see also* Section V below (arguing alleged cumulative errors did not aggregately affect Hipps's

17

substantial rights). Thus, Hipps has not established that he is entitled to relief under plain-error review.

## II. The district court did not plainly err by allowing Agent Shores to testify that he had concerns that Hipps was not being honest with him and that he had told Hipps that he did not believe him.

Hipps contends that the prosecutor improperly elicited testimony from Agent Shores regarding his opinion that Hipps had not been truthful in his interviews, *see* Hipps's brief at 27–29, but the record belies that argument. First, the prosecutor never asked Agent Shores about Hipps's credibility. Instead, Agent Shores gave the challenged testimony in response to questions: "Okay, so what happened after this?"; "So did you confront—did you confront the defendant about—about all of this?"; "Did you at any point after that—after the discussion, did you then at that point threaten to put him away for a long time or anything in that vein?". *See* Hipps's brief at 27–28. There was nothing improper about these questions, and, indeed, Hipps's real issue is with Agent Shores's responses, which he contends were testimony about Hipps's credibility. He is wrong.

Although Hipps is correct that the Federal Rules of Evidence preclude a witness from testifying as to the credibility of another witness, *see United States v. Henderson*, 409 F.3d 1293, 1299 (11th Cir. 2005), that is not what Agent

Shores did here. Instead, he testified that an email he had discovered showing that the threaded rods had been made in India raised concerns about whether Hipps had been honest with him in his first two interviews, Doc. 61 at 149–50, and that, during the third interview, he had told Hipps that he did not believe him, Doc. 61 at 168. These are factual statements about what Agent Shores did and why, not testimony about Hipps' credibility, and Hipps has not shown that such testimony was plainly inadmissible.[1]

To the contrary, this Court has held that a detective's testimony about his perception of a witness's truthfulness that was introduced to explain why the detective had done something was not inadmissible testimony about the credibility of another witness. *See Henderson*, 409 F.3d at 1299 ("The testimony that Collins found Grant's story to be credible was not offered to prove Grant's or Henderson's truthfulness as witnesses; instead, it explained why Collins waited to report Henderson's potential misconduct."); *see also United States v. Samson*, 540 F. App'x 927, 931 (11th Cir. 2013) (admission of detective's testimony "that he did not believe that [defendant's] initial story was credible … was not improper because it was offered for the purpose of explaining why [the detective] decided to ask [the defendant] additional questions in a second

---

[1] The only controlling precedent he cites, *United States v. Schmitz*, 634 F.3d 1247, 1268 (11th Cir. 2011), holds that it is improper to ask a testifying defendant whether another witness is lying. That's not what happened here.

interview."). That is what happened here. Agent Shores's testimony that finding evidence that the threaded rods had been made in India "raised more questions," including "concerns as to whether or not Mr. Hipps had been honest with [him] during the first two interviews," was not offered to prove that Hipps had not been honest but rather to explain the effect that finding the document had had on Agent Shores and to explain the next steps he had taken—searching STAT and re-interviewing Hipps. *See* Doc. 61 at 149–51, 160.

Agent Shores's testimony that he had told Hipps that he no longer believed what Hipps was telling him, Doc. 61 at 168, also was not plainly improper.[2] *See Samson*, 540 F. App'x at 931 (admission of detective's testimony that he twice challenged defendant's story during a post-arrest interview and told defendant that he did not believe him was not plainly erroneous). Agent Shores was not testifying about whether Hipps was credible but rather was giving a factual statement about what he had told Hipps, which was relevant to establish Hipps's reaction to the accusation: "[H]e slumped back in his chair

---

[2]Hipps objected below that this was improper opinion testimony but did not object on the ground raised on appeal—that it was improper testimony about his credibility. *See* Doc. 61 at 168. Therefore, as Hipps concedes, plain-error review applies. *See Judd v. Rodman*, 105 F.3d 1339, 1342 (11th Cir. 1997) (objection to evidence on specific grounds does not preserve the error for purposes of appeal on other grounds).

and he dropped his head, and he said, 'Deborah Raney told me to just get the stuff shipped.'" Doc. 61 at 168–69. Similarly, Agent Shores's testimony in rebuttal that he did not threaten Hipps but had told him that there would be consequences for further lies, Doc. 63 at 91, did not go to Hipps's credibility but rather to explain what had happened at the interview. So it was not plainly inadmissible either.

Indeed, not only did Hipps not object to this testimony, Hipps himself testified that Agent Shores had told him, "I do not believe you. I believe you are lying," to explain why his demeanor had changed during the interview. *See* Doc. 63 at 61–62. So, even if the district court had plainly erred in admitting Agent Shores's testimony, it is not reasonably probable that this would have affected the outcome where the jury heard the same thing from the defendant. *See Rodriguez*, 398 F.3d at 1299. This is especially true because Hipps testified at trial, so the jury was able to directly judge his credibility for itself. *See also* Section V below.

### III. The prosecutor did not improperly shift the burden of proof to Hipps, but, even if he had, any error was cured by the district court's repeated instructions to the jury regarding the correct burden of proof.

Hipps argues that one of the prosecutor's opening statements and some of his questions to Agent Shores improperly shifted the burden of proof to him,

but he objected to only one question below. The district court did not err by overruling that objection and did not plainly err with regard to the prosecutor's statement and questions to which Hipps did not object below.

Prosecutorial misconduct requires reversal only when a prosecutor makes statements at trial that (1) are improper and (2) prejudice the defendant's substantive rights. *United States v. Frank*, 599 F.3d 1221, 1237 (11th Cir.2010). A defendant's substantive rights "are prejudicially affected when a reasonable probability arises that, but for the [prosecutor's] remarks, the outcome of the trial would have been different." *United States v. Merrill*, 513 F.3d 1293, 1307 (11th Cir.2008) (internal quotation marks omitted). A prosecutor must not suggest that the defendant has an obligation to produce any evidence or to prove innocence. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). Such prosecutorial misconduct, if so pronounced and persistent that it permeates the entire atmosphere of the trial, requires reversal. *Id.* But prejudice from an improper burden-shifting comment can be cured by the court's instruction regarding the correct burden of proof. *See id.* at 1087 ("[A]lthough the prosecutor's remarks were probably improper, the district court rendered any error harmless by the repeated instructions to the jury that the defendant had no burden to produce any evidence.")

Here, the prosecutor did not improperly shift the burden of proof to

22

Hipps. The only question that Hipps objected to below came on rebuttal examination of Agent Shores. *See* Hipps's brief at 25. The prosecutor asked Agent Shores if he had ever shown an email to Hipps that Hipps had claimed he did not send, and Agent Shores responded, "No, he never made any statements to the effect of 'That's not my email. I did not send that or receive that email.'" Doc. 61 at 205. At that point, the United States had already established that the email accounts of the emails at issue belonged to Hipps, *see* Doc. 61 at 139, 142, and, on cross-examination, defense counsel had tried to suggest that other people had access to those accounts, *see* Doc. 61 at 187–88. So the prosecutor's question was meant to rebut that argument, not to shift the burden of proof.

Hipps's unpreserved burden-shifting arguments fare no better. For the first time on appeal, Hipps argues that the prosecutor's statement that the evidence would show that Hipps did not tell Agent Shores about the threaded rods until the third interview shifted the burden of proof. But nothing about that statement suggested that Hipps had the burden to prove his innocence or to produce any evidence. Hipps was accused of concealing the foreign origin of threaded rods that he had provided to NASA. The prosecutor did not say that Hipps had not told Agent Shores that he was innocent. To the contrary, the prosecutor stated that the evidence showed that Hipps had not volunteered any

23

information about the threaded tubes until after Agent Shores had confronted him at the third interview. That evidence was relevant to show that Hipps was hiding his guilt. *Cf. United States v. Sing*er, 963 F.3d 1144, 1159 (11th Cir. 2020) (defendant's failure to disclose that he was transporting a particular item to Cuba until after officers found it supported conclusion that he knew he was not allowed to export that item without license).

The prosecutor's challenged questions to Agent Shores were along the same lines. Agent Shores testified that he had interviewed Hipps to find out about the stainless steel tubing and that, at that time, he did not suspect that there was anything wrong with the threaded rods. *See* Doc. 61 at 136, 150. The prosecutor then asked Agent Shores if he had asked Hipps any general questions about if he had known of any issues with any other parts, and Agent Shores replied that he had and that Hipps had said no. Doc. 61 at 138. The prosecutor then asked Agent Shores if Hipps had said anything about the threaded rods during the second interview, and Agent Shores answered that Hipps had not. *Id.* at 142. Again, nothing about these exchanges suggested that Hipps was required to prove his innocence.

In any event, even if any of the prosecutor's challenged statements or questions had improperly shifted the burden of proof, Hipps has not shown that he was prejudiced in light of the district court's repeated, correct jury

24

instructions regarding the burden of proof. *See Simon*, 964 F.2d at 1087 ("This court has held that the prejudice from the comments of a prosecutor which may result in a shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof."). Here, the district court instructed the jury at the beginning of the trial that "the defendant is presumed innocent until proven guilty," that "the burden of proof is on the Government until the end of the case," and that "[t]he defendant has no burden to prove his innocence or to present any evidence or to testify." Doc. 61 at 97. And, right before closing arguments, the Court twice reminded the jury of the United States' burden before closing arguments. *See* Doc. 63 at 100 (court instructing that "[t]he law presumes every defendant to be innocent"; [t]he defendant does not have to prove his innocence or present any evidence at all"; "[t]he Government must prove guilt beyond a reasonable doubt"; and that, if the United States fails to prove the defendant's guilt beyond a reasonable doubt, the jury "must find the defendant not guilty"); *see also id.* at 111 (court stating to jury, "The Government has the burden, as you know, and goes first and has the opportunity to present rebuttal."). Those instructions, which this Court must presume the jury followed, *In re Price*, 964 F.3d 1045, 1049 (11th Cir. 2020), would have rendered harmless any potential burden shifting.

## IV.    The prosecutor did not plainly comment impermissibly on Hipps's Fifth Amendment right to remain silent.

For the first time on appeal, Hipps argues that the prosecutor's statement and questions identified in section III improperly commented on his Fifth Amendment right to remain silent. But his argument relates to pre-arrest silence, and, as he concedes on page 27 of his brief, this Court held in *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991), that "the government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings."[3] So, even if the prosecutor had improperly commented on Hipps's silence—which he did not—that would not have been error, let alone plain error. Hipps is entitled to no relief on this ground.

## V.    The cumulative weight of any errors does not warrant the reversal of Hipps's convictions.

Finally, Hipps's argument that he is entitled to relief under the cumulative-error doctrine is meritless. *See* Hipps's brief at 32–34. He has not shown any error, yet alone multiple errors affecting his substantial rights.

"The cumulative error doctrine provides that an aggregation of non-

---

[3]Hipps asserts that *Rivera* was wrongly decided, but this Court must follow its precedent. *See United States v. Golden*, 854 F.3d 1256, 1257 (11th Cir. 2017).

reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006). "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant's substantial rights were affected." *Baker*, 432 F.3d at 1223 (internal quotation marks omitted). To show that the alleged errors affected his substantial rights, Hipps must show that, but for those errors, there was a reasonable probability that the outcome would have been different. *See United States v. Iriele*, 977 F.3d 1155, 1179 (11th Cir. 2020) (citing cases).

Hipps cannot prevail on his claim that cumulative error deprived him of a fair trial. First, for reasons explained above, Hipps "has not established a single error, let alone the aggregation of 'many errors' that may require a reversal where the individual errors do not. *See United States v. Ochoa*, 941 F.3d 1074, 1106 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2553 (2020). Second, even if this Court were to assume that any of Hipps's arguments established error under the appropriate standard of review, he has failed to demonstrate that the aggregate effect of these errors substantially influenced the outcome of his trial,

as required to establish that cumulative error rendered his trial unfair.

There were two core issues relevant to Hipps's guilt: (1) whether he knew that NASA required that parts be manufactured in the United States, and (2) whether he knew that the threaded rods were not manufactured in the United States. As to the former, Hipps admitted that he had known about the domestic-origin requirement. *See* Doc. 61 at 137–38, 142. As to the latter, the evidence relevant to his knowledge was that he had received an email with attachments showing that the threaded rods had been in India, Gov't Ex. 5.2, that copies of the email attachment were discovered in a file folder that Hipps had maintained, Gov't Ex. 6.2, Doc. 61 at 167, Doc. 63 at 12–13, that rods had been labeled "MADE IN INDIA," Gov't Ex. 7.3, Doc. 61 at 157–58, and that Hipps had admitted that he removed those labels, Doc. 61 at 169, Doc. 63 at 14. None of the contested evidence or alleged prosecutorial misconduct had any direct bearing on that evidence.

Moreover, Hipps testified at trial that he did not know that the threaded rods had been made in India while he had worked at STAT, Doc. 63 at 64; that he had not read the email attachment, *id.* at 50–51; and that, even though he had removed the labels from the threaded rods, he had not noticed that labels' "MADE IN INDIA" notation, *id.* at 61–62. By choosing to testify, Hipps ran "a substantial risk of bolstering the [g]overnment's case." *See United*

28

*States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). This is because, if the jury did not consider Hipps's testimony to be credible, it was entitled to conclude the opposite was true. *Id.* ("[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt."). In light of the United States' evidence and the jury's disbelief of Hipps's testimony, Hipps cannot show that but for the alleged errors, the jury would have acquitted him. He therefore is not entitled to relief under the cumulative-error doctrine.

## Conclusion

The United States requests that this Court affirm the judgment of the district court.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:    *s/ Holly L. Gershow*
HOLLY L. GERSHOW
Assistant United States Attorney
Appellate Division
Florida Bar No. 98960
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
holly.gershow@usdoj.gov

30

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF January 13, 2021 to:

WILLIAM R. PONALL, ESQ.
*Counsel for Jonathan Charles Hipps*

*s/ Holly L. Gershow*
HOLLY L. GERSHOW
Assistant United States Attorney

gkpr no 01/11/21

*b_Hipps, Jonathan US response brief fnl.docx*